## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Nicholas Adam LaFon, | Case No. 22-cv-487 (ECT/DJF) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden Jeffrey Fikes FCI-Sandstone, | |
| Respondent. | |

This matter is before the Court on Petitioner Nicholas Adam LaFon's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his loss of good conduct time credit ("Petition")[1] (ECF No. 1). Because Mr. LaFon fails to state a claim for relief, the Court recommends dismissing his Petition with prejudice.

## BACKGROUND

Mr. LaFon pled guilty in the Southern District of Iowa to possession with intent to distribute a mixture and substance containing marijuana in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(D), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). The trial court sentenced Mr. LaFon to a total term of imprisonment of 63 months, with a three-year supervised release period to follow. *United States v. LaFon*, Case No. 4:19-cr-00139 (S.D. Iowa) (Judgment in a Criminal Case) (ECF No. 67). At all times relevant to Mr. LaFon's claims, he served that term of imprisonment at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth") (ECF No. 1). By the time he filed his Petition, the

---

[1] This matter was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

Bureau of Prisons ("BOP") had transferred Mr. LaFon to the Federal Correctional Institute in Sandstone, Minnesota ("FCI-Sandstone"), where he continues to serve his term of imprisonment. *Id.*

In his Petition, Mr. LaFon contends that on July 21, 2021, officers searched the room he shared with another inmate and located tobacco products in the unsecured locker that had been assigned to him (ECF No. 1 at 1). Officers also searched a desk in the room and located paper inside a pen in the desk drawer. (*Id.*) The paper later field tested positive for codeine/morphine. (*Id.*) Prison officials subsequently charged Mr. LaFon with possession of narcotics and possession of a nonhazardous tool (tobacco) in violation of prohibited act codes 113 and 331. (*Id.*) The Unit Discipline Committee ("UDC") conducted a hearing on July 29, 2021, and referred the matter to the Disciplinary Hearing Officer ("DHO") for further proceedings. (*Id.* at 1–2.) The DHO held a hearing on August 17, 2022. (*Id.* at 2.) After the hearing, the DHO found Mr. LaFon guilty of the charges and imposed sanctions, including, as relevant here, the loss of 55-days of good conduct time credit. (*Id.*)

On November 29, 2021, Mr. LaFon appealed the disciplinary action to the BOP's Regional Office. (*Id.*) In that appeal, he: attached the incident report; referenced the incident report by number, included the date of the incident, the offense charged, and the date of the disciplinary hearing; and noted that he had not yet received the DHO report. (*Id.*) The Regional Office rejected Mr. LaFon's appeal, however, because he did not include a copy of the DHO report. (*Id.*) On January 13, 2022, Mr. LaFon appealed the rejection to the BOP's Central Office, but that appeal was rejected as well. (*Id.*) He then filed his Petition with the Court. (*Id.*) As of that date, February 24, 2022, Mr. LaFon still had not yet received his copy of the DHO report. (*Id.*)

Mr. LaFon claims the BOP's failure to timely provide him with a copy of the DHO report violated his procedural due process rights by depriving him of a meaningful opportunity to appeal the decision to sanction him with a loss of good conduct time credits. (*Id.*) He contends he was prejudiced because he did not have a copy of the DHO report before his transfer, so he was not able to obtain a statement from his former roommate for his defense. (*Id.*) Mr. LaFon requests an order restoring his good time credits and expunging the incident report from his record. (*Id.* at 5.) In response, the BOP argues Mr. LaFon received adequate process, and that sufficient evidence supports the determination that he was guilty of the prohibited acts as charged (ECF No. 6).

## ANALYSIS

To obtain habeas relief under section 2241, Mr. LaFon must show he is "in custody in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2241(c)(3). Depriving an inmate of good conduct time for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). But "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather, to satisfy due process, prison disciplinary proceedings must include: "(1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record." *Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997).

There is no dispute regarding the first two elements. First, Mr. LaFon does not allege the BOP failed to provide him with advance written notice of the disciplinary charges against him, and in fact received a copy of the incident report on July 21, 2021, the day of the search. (ECF No. 7 ¶ 9; ECF No. 7-4). Further, Mr. LaFon received a copy of the rewritten incident report on July

27, 2021, two days before the UDC Hearing on July 29, 2021.  (*Id.*)  Both reports put Mr. LaFon on notice of the charges against him and the factual basis of those charges.  Second, Mr. LaFon does not allege he was deprived of the opportunity to present evidence on his own behalf.  Indeed, the record shows that at the UDC hearing, Mr. LaFon made the following statement: "Anything found in my locker (tobacco) was mine." (ECF No. 7 ¶ 11, citing ECF No. 7-4.)  When provided notice of the DHO discipline hearing, Mr. LaFon asked for a staff representative, but explicitly declined to call any witnesses (ECF No. 7-6).  At the DHO hearing, Mr. LaFon also gave a statement and affirmed he was waiving his right to call additional witnesses (ECF No. 7-7).

Mr. LaFon's challenge instead arises under the last two elements set forth in *Ragan*, 113 F.3d at 876.  He contends that: (1) he did not receive a timely written statement by the factfinder detailing the reasons for the action; and (2) the decision was not supported by some evidence in the record (ECF No. 1 at 2–5).

### A.     Untimely Receipt of the DHO Report

According to BOP Program Statement # 5270.09, after a DHO hearing, "[t]he DHO gives the inmate a written copy of the decisions and disposition, *ordinarily within 15 work days of the decision*." (ECF No. 7-1 at 35) (emphasis added).  In this case, there is no dispute that Mr. LaFon did not receive the DHO report until March 1, 2022—well outside this 15-day timeframe (ECF No. 7-7).  But the statement's use of the word "ordinarily" means that prison regulations do not explicitly *require* delivery of the DHO report to inmates within 15 workdays of the DHO decision. *See Walton v. Fikes*, Case No. 21-cv-1269 (KMM/ECW), 2022 WL 1652658, at *6 (D. Minn. Apr. 22, 2022) ("[T]he use of the word 'ordinarily' in terms of giving an 'inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision' indicates that the 15-day

notice period is not mandatory ….”), *report and recommendation adopted by* 2022 WL 1645668 (D. Minn. May 24, 2022).

Moreover, prison regulations do not confer due process rights.  Thus, any failure to follow BOP policies and regulations would not, without more, amount to a due process violation. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (“[T]here is no federal constitutional liberty interest in having … prison officials follow prison regulations.”).

 To establish that the *delay* in receiving a copy of the DHO report violated his due process rights, Mr. LaFon must show prejudice. *See Martinez v. Eischen*, 22-cv-1390 (JRT/DTS), 2023 WL 434171, at *2 (D. Minn. June 2, 2023), *report and recommendation adopted*, 2023 WL 4373918 (D. Minn. July 6, 2023); *see also Adams v. Fed. Bureau of Prisons*, 11-cv-2862 (MJD/SER), 2011 WL 7293381, at *2 (D. Minn. Dec. 6, 2011) (“On a repeated and consistent basis, federal courts [have held] that in prison disciplinary cases, [e]ven if a prison official’s actions create a potential due process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief.”) (internal citations omitted), *report and recommendation adopted*, 2012 WL 503798 (D. Minn. Feb. 14, 2012).   Here, Mr. LaFon claims the BOP’s delay in providing him with a copy of the DHO report prejudiced him because: (1) it prevented him from appealing the decision; and (2) he was unable to contact his former cellmate to obtain a statement in his defense before he was transferred from FPC-Duluth to FCI-Sandstone (ECF No. 1 at 2).  The Court finds these arguments unavailing for two reasons.

First, nothing prevented Mr. LaFon from filing an appeal. The BOP has established a multi-tier administrative remedy program. *See generally* 28 C.F.R. § 542.10 *et seq.* That program requires inmates to file the initial request for administrative review (BP-9) within “20 calendar days *following the date on which the basis for the request occurred*.” 28 C.F.R § 542.14(a)

(emphasis added). Courts in this district have repeatedly interpreted this language as starting the 20-day clock for appeal "from the date of *receipt* of the DHO report, not the date of the hearing." *Arroyo v. Fikes*, 21-cv-2489 (KMM/BRT), 2022 WL 2820405, at *3 (D. Minn. May 5, 2022) (collecting cases) (emphasis in original), *report and recommendation adopted sub nom.*, 2022 WL 2819577 (D. Minn. July 19, 2022).

In this case, when Mr. LaFon filed his initial request for administrative review of the DHO action on November 22, 2021 (more than 20 days after the DHO hearing), the Regional Office rejected it because he did not attach the DHO report. (*See* ECF No. 1-1). As Mr. LaFon notes, he could not attach the DHO report because he had not yet received it when he filed his initial request for review. (*Id.* at 2.) But as the BOP points out, the deadline for requesting review was not triggered until Mr. LaFon received a copy of the DHO report on March 1, 2023. (*See* ECF No. 7-7 at 3–4); *see also*, *e.g.*, *Minhas v. Birkholz*, 20-cv-61 (JRT/DTS), 2021 WL 769455, at *3 (D. Minn. Jan. 28, 2021) ("Minhas received a copy of the DHO Report on July 19, 2019 …. The report advised him of his right to appeal the decision within 20 days under the Administrative Remedy Procedure."), *report and recommendation adopted*, 2021 WL 766719 (D. Minn. Feb. 26, 2021). Accordingly, the BOP's failure to timely provide Mr. LaFon with a copy of the DHO report prior to his November 22, 2021 appeal merely delayed—but did not preclude—him from filing an appeal.[2] The delay, alone, does not constitute prejudice.

---

[2] Mr. LaFon's reliance on *Hawkins v. Sproul*, Case No. 18-cv-2206 (NJR), 2020 WL 1905170 (S.D. Ill. Apr. 17, 2020), is misplaced. In *Hawkins*, the petitioner challenged his loss of good conduct time credits, claiming the BOP's failure to timely provide him with a copy of the DHO's report deprived him of the ability to appeal that decision because his request for administrative review was denied on grounds that he failed to attach a copy of the report. *Id.* at *2. In that case, the district court agreed, finding the petitioner was denied due process and ordering that his good conduct credits be restored. *Id.* at *5. But in that case, the BOP had argued the petition should be dismissed without prejudice for failure to first exhaust administrative remedies. *Id.* In contrast, the BOP is making no such argument here (ECF No. 6 at 14). Furthermore, Mr. LaFon did not request administrative review of the DHO decision until

Second, the record shows that the BOP notified Mr. LaFon of his right to call witnesses prior to his DHO hearing and that he never requested that the DHO consider any witness statements (ECF Nos. 7-5, 7-7 at 1). Given that Mr. LaFon voluntarily chose not to call his former cellmate, M.S., to testify at his DHO hearing, the causal chain between Mr. LaFon's inability to get a statement from M.S. for future appeals of that decision and Mr. LaFon's late receipt of his DHO report cannot constitute prejudice. Moreover, there is no indication that any statement M.S. might have provided would have been exculpatory. M.S. was also subject to disciplinary proceedings and similarly found guilty of Code 113 and 331 violations. (*See* ECF No. 7 ¶ 17.) During those proceedings, M.S. denied knowledge of the items found in Mr. LaFon's locker and, like Mr. LaFon, denied knowledge of the pen tube located in the desk drawer. (*Compare id.* ¶ 17, *with* ECF No. 7-7 at 1.) Mr. LaFon makes no allegations suggesting M.S. would have provided him with a different statement than the one M.S. offered at his own disciplinary hearing, which implied Mr. LaFon may have been culpable for the contents of the pen tube. Mr. LaFon thus has failed to assert a due process violation because he has established no facts suggesting the delay in receiving his DHO report actually prejudiced him in any way.

## B.    Supporting Evidence

The Court also rejects Mr. LaFon's claim that the disciplinary action was not adequately supported by "some evidence." The "some evidence standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (quoting *Superintendent v. Hill*, 472 U.S.

---

November 22, 2021—well outside the 20-day period after the DHO hearing took place on August 17, 2021. Thus, if his deadline to appeal was triggered by the date of the hearing as he appears to suggest, and not—as the Court here finds—by the date of *receipt* of the DHO decision, his request for administrative review would have been untimely and improper (ECF No. 1 at 4).

445, 455-56 (1985)).  Instead, "[i]f there is 'any evidence in the record' that could support the finding of the disciplinary authority, then the sanctions comport with due process."  *Id.*

The incident report and the DHO report satisfy this standard.  According to the DHO report, Mr. LaFon admitted that the tobacco found in the locker was his (ECF No. 7-7 at 1).  Further, the incident report establishes that prison officials found the pen containing the controlled substance in the drawer of a desk located in the common area of the room Mr. LaFon shared with M.S.  (*Id.*) The DHO reviewed this evidence, along with the results from the testing of the substance, the chain of custody form, and Mr. LaFon's statement that he "has no idea" about what was found in the pen, and concluded that he committed the prohibited acts of possessing narcotics and possessing tobacco. (*Id.*)  Because prison rules require inmates to keep common areas free of contraband, prisoners may be held responsible collectively for any prohibited items found in the shared spaces of their dorm.  *See Flowers* 661 F.3d at 981 (upholding the loss of good conduct time based on a theory of collective responsibility for weapons found in a shared area); *Mason v. Sargent,* 898 F.2d 679 (8th Cir. 1996) (finding that "some evidence" justified punishing an inmate for contraband found in a shared locker, even though another inmate admitted responsibility for placing the items inside).[3]  For these reasons, the Court finds the record meets the "some evidence" standard for establishing Mr. LaFon violated prison rules.  The DHO's decision to take away fifty-five days of good conduct time from Mr. LaFon thus should be sustained.  *See Gomez v. Graves*,

---

[3] Mr. LaFon asserts that initial field testing of the paper found in the pen that was in the desk drawer came back positive for codeine/morphine (ECF No. 1).  The incident report (re-write) says that two pieces of that paper tested positive for Amphetamine, with no mention of the paper testing positive for codeine/morphine (ECF No. 7-4).  To the extent Mr. LaFon highlights this perceived discrepancy as undermining the evidence against him, the Court disagrees.  For the reasons outlined above, regardless of the specific nature of the controlled substance, prisoners are collectively responsible for prohibited items found in shared spaces in their cells.  *See, e.g.*, *Flowers* 661 F.3d at 981.  The presence of *any* controlled substance in the shared space of Mr. LaFon and M.S.'s cell thus satisfies the "some evidence" standard necessary to support the DHO's finding of guilt.

323 F.3d 610, 612 (8th Cir. 2003) ("[C]ourts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record.").

**RECOMMENDATION**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS RECOMMENDED THAT** Nicholas Adam LaFon's petition for habeas corpus under 28 U.S.C. § 2241, (ECF No. [1]) be **DENIED** and that this matter be **DISMISSED WITHOUT PREJUDICE**.

Dated: November 13, 2023                          *s/ Dulce J. Foster*
                                                  DULCE J. FOSTER
                                                  United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).